**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| International Fresh Produce Association, American Farm Bureau Federation, Mississippi Farm Bureau Federation, Stone County Farm Bureau, Chamber of Commerce of the United States of America, AmericanHort, Florida Fruit & Vegetable Association, North American Blueberry Council, Texas International Produce Association, U.S. Apple Association, and the State of Mississippi, <br><br> Plaintiffs, <br><br> v. <br><br> United States Department of Labor; Julie Su, Acting U.S. Secretary of Labor, *in her official capacity*; Jose Javier Rodriguez, Assistant Secretary for Employment and Training, U.S. Department of Labor, *in his official capacity*; and Jessica Looman, Administrator of the Wage & Hour Division, U.S. Department of Labor, *in her official capacity*, <br><br> Defendants. | Civ. No. 1:24cv309-HSO-BWR |

**BRIEF OF AMICI CURIAE CENTRO DE LOS DERECHOS DEL MIGRANTE AND CANDELARIO RODRIGUEZ SERRANO IN OPPOSITION TO PLAINTIFFS' MOTION FOR A SECTION 705 STAY OR PRELIMINARY INJUNCTION**

Robert McDuff
MS Bar 25332
Mississippi Center for Justice
Jackson, MS 39215
(601) 259-8484
rbm@mcdufflaw.com

Adam R. Pulver
*Admitted pro hac vice
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Attorneys for Amici Curiae*

November 4, 2024

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................................................ii

INTRODUCTION ................................................................................................................ 1

INTERESTS OF AMICI CURIAE...................................................................................... 2

BACKGROUND ................................................................................................................. 3

I.   The H-2A Program ...................................................................................................... 3

II.  The Challenged Rule................................................................................................... 5

ARGUMENT ...................................................................................................................... 8

I.   The challenged provisions of the Rule are within the statutory authority that Congress
     delegated to DOL. ...................................................................................................... 8

     A.  Congress delegated broad statutory authority to DOL to issue regulations to prevent
         H-2A visas from having an adverse effect on domestic workers........................ 9

     B.  The challenged provisions are an appropriate exercise of DOL's delegated
         authority. ........................................................................................................... 12

II.  The NLRA does not preclude the challenged provisions........................................ 13

III. Any relief should be limited to the worker voice and empowerment provisions. .................. 14

CONCLUSION.................................................................................................................. 16

# TABLE OF AUTHORITIES

**Pages**

**Cases**

*AFL-CIO v. Dole*,
    923 F.2d 182 (D.C. Cir. 1991) ................................................................................ 8

*Arriaga v. Florida Pacific Farms, LLC*,
    305 F.3d 1228 (11th Cir. 2002) .............................................................................. 5

*Bethlehem Steel Co. v. N.Y. State Labor Relations Board*,
    330 U.S. 767 (1947) .............................................................................................. 14

*Board of County Commissioners of Weld County v. EPA*,
    72 F.4th 284 (D.C. Cir. 2023) .............................................................................. 15

*Califano v. Yamasaki*,
    442 U.S. 682 (1979) .............................................................................................. 15

*Chamber of Commerce of U.S. v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) .............................................................................. 14

*Collins v. Mnuchin*,
    938 F.3d 553 (5th Cir. 2019) .................................................................................. 9

*Collins v. Yellen*,
    594 U.S. 220 (2021) ................................................................................................ 9

*Davenport v. Washington Education Ass'n*,
    551 U.S. 177 (2007) .............................................................................................. 13

*Florida Growers Ass'n v. Su*,
    2024 WL 670464 (M.D. Fla. Jan. 5, 2024) .......................................................... 12

*Florida Sugar Cane League, Inc. v. Usery*,
    531 F.2d 299 (5th Cir. 1976) ...................................................................... 3, 4, 10

*Franciscan Alliance, Inc. v. Burwell*,
    227 F. Supp. 3d 660 (N.D. Tex. 2016) ................................................................ 15

*George v. McDonough*,
    596 U.S. 740 (2022) .............................................................................................. 10

*Greene v. Dayton*,
    806 F.3d 1146 (8th Cir. 2015) .............................................................................. 13

*K Mart Corp. v. Cartier, Inc.*,
    486 U.S. 281 (1988) ................................................................................................ 15

*Kansas v. DOL*,
    2024 WL 3938839 (S.D. Ga. Aug. 26, 2024) ........................................................ 12

*Loper Bright Enterp. v. Raimondo*,
    144 S. Ct. 2244 (2024) ........................................................................................ 9, 12

*Luminant Generation Co. LLC v. EPA*,
    714 F.3d 841 (5th Cir. 2013) ................................................................................... 9

*Madsen v. Women's Health Ctr., Inc.*,
    512 U.S. 753 (1994) ................................................................................................ 15

*Medical Center Pharmacy v. Mukasey*,
    536 F.3d 383 (5th Cir. 2008) ................................................................................. 14

*Mendoza v. Perez*,
    754 F.3d 1002 (D.C. Cir. 2014) ............................................................................. 12

*National Ass'n of Manufacturers v. SEC*,
    105 F.4th 802 (5th Cir. 2024) .......................................................................... 15, 16

*Overdevest Nurseries, L.P. v. Walsh*,
    2 F.4th 977 (D.C. Cir. 2021) ................................................................................. 12

*Texas Medical Ass'n v. HHS*,
    __ F.4th __, No. 23-40605, 2024 WL 4615744 (5th Cir. Oct. 30, 2024) ................... 9

*Texas RioGrande Legal Aid, Inc. v. Range*,
    594 F. App'x 813 (5th Cir. 2014) ............................................................................. 6

*UAW-Labor Employment & Training Corp. v. Chao*,
    325 F.3d 360 (D.C. Cir. 2003) ............................................................................... 14

*United Farm Workers of Am., AFL-CIO v. Arizona Agricultural Employment Relations Board*,
    669 F.2d 1249 (9th Cir. 1982) ............................................................................... 14

*VanDerStok v. Garland*,
    No. 23-10718, 2023 WL 4945360 (5th Cir. July 24, 2023) ................................... 15

*Wilmar Poultry Co., Inc. v. Jones*,
    430 F. Supp. 573 (D. Minn. 1977) ......................................................................... 14

**Statutes**

8 U.S.C. § 1101(a)(15)(H)(ii) ..................................................................................... 4

8 U.S.C. § 1188(a)(1) ............................................................................................ 4, 9

8 U.S.C. § 1188(b) ......................................................................................... 10, 11, 14

8 U.S.C. § 1188(c) ............................................................................................... 4, 11

8 U.S.C. § 1188(d) .................................................................................................... 4

8 U.S.C. § 1188(g) .................................................................................................... 4

29 U.S.C. §§ 49–49n ................................................................................................ 5

29 U.S.C. § 152(3) .................................................................................................. 13

29 U.S.C. § 157 ...................................................................................................... 13

Immigration Reform and Control Act of 1986, Pub. L. 99-603, 100 Stat. 3359 (1986)................. 4

**Rules and Regulations**

<u>2024 Regulations:</u>

20 C.F.R. § 655.120(a)............................................................................................. 8

20 C.F.R. § 655.120(b)(3) ........................................................................................ 7

20 C.F.R. § 655.122(l)(4).......................................................................................... 8

20 C.F.R. § 655.122(n)(2)......................................................................................... 7

20 C.F.R. § 655.135 ................................................................................................. 6

20 C.F.R. § 655.135(h) ........................................................................... 2, 6, 7, 8, 12, 15

20 C.F.R. § 655.135(m) ................................................................................ 7, 8, 12, 15

20 C.F.R. § 655.135(n) ............................................................................................. 7

20 C.F.R. § 655.175 ................................................................................................. 7

20 C.F.R. § 655.190 ................................................................................................. 8

20 C.F.R. § 655.210(g)(3) ......................................................................................... 8

<u>Historic Regulations:</u>

20 C.F.R. § 655.120(b)(3) (2023) .............................................................................. 7

20 C.F.R. § 655.121(a) (2010) .................................................................................. 6

20 C.F.R. § 655.122(i)(5) (2022)............................................................................... 7

20 C.F.R. § 655.122(n) (2022) ................................................................... 7

20 C.F.R. § 655.135(h) (2022) ................................................................... 6

Department of Labor, Final Rule, Improving Protections for Workers in Temporary
   Agriculture in the United States, 89 Fed. Reg. 33898 (Apr. 29, 2024) ............................. *passim*

Department of Labor, Notice of Proposed Rulemaking, Improving Protections for Workers
   in Temporary Agricultural Employment in the United States, 88 Fed. Reg. 63570 (Sept. 15,
   2023) ........................................................................................ 5

Department of Labor, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the
   United States, 87 Fed. Reg. 61660 (Oct. 12, 2022) ...................................... 5

Department of Labor, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the
   United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg.
   77110 (Dec. 18, 2008) ........................................................................ 5

Department of Labor, Final Rule, Labor Certification Process for the Temporary Employment
   of Aliens in Agriculture in the United States: Prevailing Practice Determinations, 57 Fed. Reg.
   43118 (Sept. 17, 1992) ................................................................. 11, 12

Department of Labor, Interim Final Rule, Labor Certification Process for the Temporary
   Employment of Aliens in Agriculture and Logging in the United States, 52 Fed. Reg. 20496
   (June 1, 1987) ......................................................................... 4, 10, 12

Department of Labor, Interim Final Rule, Enforcement of Contractual Obligations for Temporary
   Alien Agricultural Workers Admitted Under Section 216 of the Immigration and Nationality
   Act, 52 Fed. Reg. 20524 (June 1, 1987) ..................................................... 5

**Other Authorities**

Congressional Research Service, H-2A and H-2B Temporary Worker Visas: Policy and Related
   Issues (May 11, 2023), https://crsreports.congress.gov/product/pdf/R/R44849 ....................... 3

H.R. Rep. No. 99-682 (I) (1986) ............................................................... 4

**INTRODUCTION**

In 1986, Congress created the H-2A program to allow employers to hire temporary foreign agricultural workers when there are insufficient domestic workers willing and able to perform a given job. When doing so, Congress understood that allowing the importation of foreign workers might incentivize employers to offer substandard wages and working conditions that domestic workers would not accept, which would itself have a depressive effect on the wages and conditions of domestic workers. Thus, Congress expanded the role that had been given to the Secretary of Labor under the existing temporary employment visa program, conditioning the issuance of an H-2A visa on the Secretary's determination both that domestic labor is unavailable and that the use of H-2A labor will not have an adverse effect on the wages and working conditions of domestic workers similarly employed. As the Department of Labor (DOL) and reviewing courts have consistently recognized, the statute explicitly contemplates that the agency will issue regulations to ensure H-2A employers are not engaged in practices that would have such an effect. And, since 1987, DOL has repeatedly done just that.

Here, Plaintiffs seek a stay of or preliminary injunction against an April 2024 rule that amends those long-standing regulations in response to well-documented abuses that led to substandard conditions for H-2A workers and exerted downward pressure on the wages and conditions of domestic workers. *See* DOL, Final Rule, Improving Protections for Workers in Temporary Agriculture in the United States, 89 Fed. Reg. 33898 (Apr. 29, 2024). Their motion should be denied, however, because the Rule is well within the broad regulatory authority Congress delegated to DOL to ensure the H-2A program does not harm domestic workers, as recognized by a consistent line of precedent. Moreover, the Rule does not run afoul of the National Labor Relations Act (NLRA). The NLRA's silence as to collective bargaining rights for agricultural

workers does not limit or displace federal agencies' authority under other statutes that may encourage *or* discourage collective action by such workers.[1] Finally, even if the Court were to agree with any of Plaintiffs' arguments as to the merits, any injunction should be limited to the specific "worker voice and empowerment" provisions addressed in Plaintiffs' motion, as those provisions are severable from other provisions of the Rule that Plaintiffs do not address on the merits, including, for example, provisions as to the effective date of annual recalculations of the minimum required wage rate, transparency as to the offered wage rate, and the effect of delayed start dates.

## INTERESTS OF AMICI CURIAE

Amicus Centro de los Derechos del Migrante (CDM) is a nonprofit organization with offices in the United States and Mexico, focused on promoting migrant workers' rights under U.S. law. Since its founding in 2005, CDM has worked with thousands of H-2A workers, as well as domestic workers in corresponding employment and workers on other kinds of visas, in various capacities. CDM provides legal services to workers and, together with other partners, conducts outreach and education regarding health and community resources. CDM has experienced obstacles in conducting this work due to workers' fears of retaliation and employer intimidation, and restrictions on access to employer-provided housing. CDM has also convened the Comité de Defensa del Migrante (Migrant Defense Committee, or "Comité"), a group of current and former migrant workers in the H-2A and other programs. The Comité, which does not engage in collective bargaining, works to empower and organize migrant workers in the United States and in their home communities, to create a culture of informed migration, and to center migrant workers'

---

[1] While amici agree with DOL that 20 C.F.R. § 655.135(h) does not violate the First Amendment, this brief only addresses Plaintiffs' statutory arguments.

2

perspectives in conversations about policies that affect them. Fear of retaliation constrains some Comité members' ability to carry out the organizing and educational activities that are central to the Comité's mission. CDM submitted comments as part of the rulemaking at issue in this action.

Amicus Candelario Rodriguez Serrano is a Mexican national who has performed seasonal work in the United States under the H-2A program and intends to continue to do so. In his prior H-2A work, he experienced poor treatment by employers, including delayed wages, withholding of his passport, unsafe transportation, retaliation for complaints about working conditions on behalf of himself and others, and restrictions on his ability to access government services.

The challenged rule eliminates certain obstacles that CDM has encountered in conducting its work, and makes it easier to connect H-2A workers with important services. The rule also helps ensure that H-2A workers like Mr. Rodriguez Serrano are not taken advantage of and required to work under conditions that are significantly worse than those typically provided to domestic workers.

## BACKGROUND

### I.      The H-2A Program

Enacted in 1952, the Immigration and Nationality Act (INA) created the H-2 nonimmigrant visa category for temporary foreign workers. *See* Cong. Rsch. Serv., H-2A and H-2B Temporary Worker Visas: Policy and Related Issues at 1 (May 11, 2023).[2] Under that statute, the Department of Justice (DOJ) promulgated regulations making the Secretary of Labor "responsible for whatever fact finding and evaluation are necessary to effectuate the statutory purpose of protecting domestic workers' right to work." *Fla. Sugar Cane League, Inc. v. Usery*, 531 F.2d 299, 300–01 (5th Cir. 1976). The Secretary in turn issued further regulations to guide his exercise of that duty. *Id.*

---

[2] https://crsreports.congress.gov/product/pdf/R/R44849

As to agricultural workers, the DOL and DOJ "regulations d[id] not fully meet the need for an efficient, workable and coherent program that protects the interests of agricultural employers and workers alike." H.R. Rep. No. 99-682 (I), at 80 (1986). As a result, as part of the Immigration Reform and Control Act of 1986 (IRCA), Congress amended the INA to separate the H-2 program into two separate programs, referred to as the H-2A program for agricultural workers, and the H-2B program for non-agricultural employment. Pub. L. 99-603, 100 Stat. 3359 (1986), *codified at* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a)–(b). As to the H-2A program, the amendments expanded the role for the Secretary of Labor, codifying previous regulations establishing the foreign labor certification process, and limiting H-2A visas to situations where the Secretary certified "(A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and (B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed." *Id.* § 301, *codified at* 8 U.S.C. § 1188(a)(1). The amended statute also requires the Secretary to evaluate whether certain additional conditions exist before granting such certifications, *id.*, *codified at* 8 U.S.C. §§ 1188(c), (d), and gives the Secretary vast enforcement authority to ensure that employers abide by the statute, regulations, and terms of employment contracts, *id.*, *codified at* 8 U.S.C. § 1188(g)(2).

Recognizing that "the amendments to the INA made by IRCA codify DOL's role in the temporary alien agricultural labor certification process," DOL first published H-2A regulations in 1987. DOL, Interim Final Rule, Labor Certification Temporary Employment of Aliens in Agriculture and Logging in the United States, 52 Fed. Reg. 20496 (June 1, 1987) (1987 Rule); *see* DOL, Interim Final Rule, Enforcement of Contractual Obligations for Temporary Alien Agricultural Workers Admitted Under Section 216 of the Immigration and Nationality Act, 52 Fed.

Reg. 20524 (June 1, 1987). Under these Rules, state agencies that receive funding as part of the Employment Service system provide recruitment and other services for employers pursuant to the Wagner-Peyser Act, 29 U.S.C. §§ 49–49n. DOL has updated these regulations periodically in the ensuing four decades, but they have long "include[d] provisions related to housing, meals, work-related equipment, and transportation." *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228, 1232–33 (11th Cir. 2002); *see, e.g.*, DOL, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the United States, 87 Fed. Reg. 61660 (Oct. 12, 2022); DOL, Final Rule, Temporary Agricultural Employment of H-2A Aliens in the United States; Modernizing the Labor Certification Process and Enforcement, 73 Fed. Reg. 77110 (Dec. 18, 2008).

## II.      The Challenged Rule

In September 2023, DOL issued a proposal to amend the H-2A regulations "in order to prevent exploitation and abuse of agricultural workers and ensure that unscrupulous employers do not financially gain from their violations or contribute to economic and workforce instability by circumventing the law, both of which would adversely affect the wages and working conditions of workers in the United States similarly employed, and would undermine the Department's ability to determine whether there are, in fact, insufficient U.S. workers for proposed H-2A jobs." DOL, Notice of Proposed Rulemaking, Improving Protections for Workers in Temporary Agricultural Employment in the United States, 88 Fed. Reg. 63570, 63753 (Sept. 15, 2023). After a public comment period, the agency issued the final rule. 89 Fed. Reg. 33898. The Rule contains dozens of operative provisions and amends pre-existing program regulations on a range of topics, which can be divided into three categories.

**Employment Service Regulations.** First, the Rule amends 20 C.F.R. parts 651, 653, and 658, subpart F, which govern state workforce agencies' provision of Employment Service services

to employers, including access to the Agricultural Recruitment System—which helps agricultural employers recruit temporary qualified U.S. workers.[3] These revisions include changes to debarment rules for employers' successors in interest, provisions as to when services may be discontinued, provisions regarding how wages are to be displayed in job orders, and duties relating to misrepresentation or noncompliance by employers. *See* Rule, 89 Fed. Reg. at 33904–36.

**Labor certification process regulations.** The Rule also amends 20 C.F.R. part 655, subpart B, which governs the H-2A labor certification process. *See* 89 Fed. Reg. at 33936–34041 (discussing changes to part 655, subpart B). This includes amendments to 20 C.F.R. § 655.135, which sets out the required assurances and obligations of H-2A employers. 89 Fed. Reg. at 34062–63. The prior version of the Rule prohibited employers from retaliation based on the filing of administrative complaints or testimony, invoking any H-2A statutory or regulatory rights, or seeking legal assistance regarding the H-2A program. *See* 20 C.F.R. § 655.135(h) (2022). To these prohibited bases of retaliation, the agency added consultation with a "key service provider," defined to include healthcare workers, clergy, attorneys, law enforcement, and others; and the filing of a complaint or participation in an investigation or proceeding relating to the violation of any federal, state, or local law or regulation. 20 C.F.R. § 655.135(h)(1).

The Rule also adds a new provision prohibiting employers from intimidating or retaliating against any agricultural employee on the basis that they had engaged in, or refused to engage in, "activities related to self-organization" or "other concerted activities for the purpose of mutual aid or protection relating to wages or working conditions," or because they had refused to attend, listen

---

[3] "An employer's initial use of the agricultural clearance order process for domestic workers, … is … a prerequisite to the employer's subsequent application for authorization to hire foreign workers through the H–2A program." *Texas RioGrande Legal Aid, Inc. v. Range*, 594 F. App'x 813, 819 (5th Cir. 2014) (citing 20 C.F.R. § 655.121(a) (2010)).

to, or view employer-sponsored communication regarding such activity. *Id.* § 655.135(h)(2). Employers are also required to permit any H-2A worker or domestic worker in corresponding employment to designate a representative to attend and provide assistance in any investigatory interview that might lead to disciplinary action. *Id.* § 655.135(m). And employers must permit workers to invite guests into employer-furnished housing, outside their workday, subject to reasonable restrictions designed to protect worker safety or prevent interference with other workers' enjoyment of housing areas. *Id.* § 655.135(n).[4]

DOL also altered the procedure for when the agency's annual changes to the "Adverse Effect Wage Rate" takes effect. The previous regulation provided that any new such rate—which often serves as the minimum wage required for an H-2A job—would take effect on the "effective date" specified in the Federal Register. 20 C.F.R. § 655.120(b)(3) (2023). Under the amended regulation, any increased rate is effective as of the date of publication. 20 C.F.R. § 655.120(b)(3).

The previous rule specified that, when an employee is terminated for cause or abandons their employment, the employer is released from certain obligations, but did not specify what constitutes a termination "for cause." *See, e.g.*, 20 C.F.R. §§ 655.122(i)(5), (n) (2022). The new Rule specifies when a termination can be labeled as such. 20 C.F.R. § 655.122(n)(2). It also adds a new provision addressing an employer's obligations where a work start date is delayed after an employer obtains a certification. *Id.* § 655.175. Where such a delay is less than fourteen days, the employer is not required to withdraw or resubmit a certification application, so long as it timely informs workers of the delay (or pays them) and provides for transportation and subsistence for workers who were already traveling to their place of employment. *Id.* § 655.175(b).

---

[4] 20 C.F.R. §§ 655.135(h)(2), (m), and (n), are collectively referred to as the "worker voice and empowerment" provisions. *See, e.g.*, 89 Fed. Reg. at 33901. Plaintiffs do not address § 655.135(n) in their memorandum.

Finally, the Rule includes a number of provisions aimed at transparency, specifying that certain wage rates must be provided in a job order, including overtime wage rates and the circumstances under which overtime wages are available, to the extent overtime is available at all. *See id.* §§ 655.120(a), 655.122(l)(4), 655.210(g)(3).

Along with these substantive changes, DOL added a severability provision, specifying that any provision of part 655, subpart B held to be invalid or unenforceable is "severable from [part 655] and shall not affect the remainder thereof." 20 C.F.R. § 655.190.

**Enforcement regulations.** The last section of the Rule revises 29 C.F.R. part 501, which covers the enforcement procedures for violations of the requirements of the H-2A program, including obligations to domestic workers. The revisions largely track the substantive revisions in other sections. *See* 89 Fed. Reg. at 34041–43.

## ARGUMENT

I.   **The challenged provisions of the Rule are within the statutory authority that Congress delegated to DOL.**

Plaintiffs contend that the INA charges DOL with only "limited duties," cherry-picking six isolated provisions of the INA, and summarily asserting that, since the challenged provisions of the Rule (20 C.F.R. § 655.135(h)(1), (h)(2)(i)–(ii), and (m)) are not covered by those provisions, DOL has exceeded its statutory authority. ECF 18 at 14–16. But as DOL and courts have consistently recognized over the last forty years, the statute contains "a rather broad congressional delegation," leaving "it to DOL's judgment and expertise to strike the balance" between the "interests of both farmworkers and growers," and to ensure H-2A visas do not have an adverse effect on domestic workers. *AFL-CIO v. Dole*, 923 F.2d 182, 184–87 (D.C. Cir. 1991). "When the best reading of a statute is that it delegates discretionary authority to an agency," the judicial review contemplated by the APA is limited to interpreting the statute to "fix[] the boundaries of the

8

delegated authority and ensuring the agency has engaged in reasoned decisionmaking within those boundaries." *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2264 (2024) (internal citations omitted); *see also Tex. Med. Ass'n v. HHS*, __ F.4th __, No. 23-40605, 2024 WL 4615744 (5th Cir. Oct. 30, 2024) (recognizing *Loper Bright* requires reviewing courts to "first determine the boundaries of the [agency's] delegated authority").

Here, the challenged provisions are an exercise of the broad delegated authority to prevent adverse effect, and the record and the agency's reasoning show DOL acted well-within the boundaries of that authority. Plaintiffs are thus unlikely to prevail on the merits of their statutory authority claim.

### A.    Congress delegated broad statutory authority to DOL to issue regulations to prevent H-2A visas from having an adverse effect on domestic workers.

As in all matters of statutory interpretation, in interpreting the scope of an agency's statutory authority, courts "follow the cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context." *Collins v. Mnuchin*, 938 F.3d 553, 577 (5th Cir. 2019) (*en banc*), *aff'd in part and rev'd in part on other grounds sub nom. Collins v. Yellen*, 594 U.S. 220 (2021); *see also Luminant Generation Co. LLC v. EPA*, 714 F.3d 841, 850 (5th Cir. 2013) ("[A] statutory provision cannot be read in isolation, but necessarily derives its meaning from the context provided by the surrounding provisions, as well as the broader context of the statute as a whole."). Here, the text and context of the statute as a whole demonstrate that Congress intended to confer broad discretionary authority on DOL to prescribe regulations to prevent H-2A visa employment from having an adverse effect on domestic workers.

To start, section 1188(a)(1) specifies that "a petition to import an alien as an H-2A worker" cannot be granted unless an employer has applied to the Secretary of Labor for a certification that:

> (A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services

> involved in the petition, and (B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

This provision codified regulations that the Attorney General had issued under the pre-amendment INA with respect to the H-2 program. *Fla. Sugar Cane*, 531 F.2d at 300 (discussing then-applicable regulations and statute). As the Fifth Circuit explained in *Florida Sugar Cane*, these regulations delegated to DOL "whatever fact finding and evaluation [was] necessary to effectuate the statutory purpose of protecting domestic workers' right to work," and "conferr[ed] extensive discretionary authority upon the Secretary of Labor." *Id.* at 303. Under these regulations, the Secretary had not only the authority, but the obligation, "to prevent the employment of seasonal foreign workers from having an adverse effect upon domestic workers." *Id.* at 304. And pursuant to that authority, the Secretary had promulgated extensive regulations relating to both the certification process and the requisite wages and working conditions. *See id.* at 301 (discussing regulations).

In enacting IRCA and specifying a role for the Secretary of Labor, Congress expanded what the Fifth Circuit had previously recognized as "extensive discretionary authority." *See* 1987 Rule, 52 Fed. Reg. at 20496 (expressing agency's contemporaneous understanding of the statutory purpose). As the Supreme Court has explained, when Congress adopts a provision "'obviously transplanted from another legal source,' it 'brings the old soil with it.'" *George v. McDonough*, 596 U.S. 740, 746 (2022). Here, Congress did that and more, as demonstrated by other provisions of section 1188, which, while not explicitly granting DOL regulatory authority, repeatedly reference existing DOL regulations and contemplate future regulations.

Section 1188(b), for example, lists conditions under which the Secretary "may not issue a certification under subsection (a)." The very first such condition is if "[t]here is a strike or lockout in the course of a labor dispute which, *under the regulations*, precludes such certification." 8 U.S.C. § 1188(b)(1) (emphasis added). This statutory provision illustrates Congress's expectation

10

that DOL would take an active role in regulating the terms and conditions of H-2A employment, and it is incompatible with Plaintiffs' argument that the statute "does not authorize DOL to regulate labor relations in connection with the H-2A visa program." ECF 18 at 14. The only logical reading of section 1188(b)(1) is that, even though no statute gave farmworkers the right to strike, Congress expected DOL to issue regulations regarding striking farmworkers. Other provisions of section 1188(b) charge the Secretary with discretionary judgment, including requirements that the Secretary determine whether assurances regarding workers' compensation are "satisfactory," and whether recruitment efforts have been sufficient. 8 U.S.C. §§ 1188(b)(3), (4).

Section 1188(c), which provides "rules" for the consideration of labor certification applications, also plainly contemplates that DOL would issue further substantive regulations. For example, such a certification should be granted only if, among other things, "the employer has complied with the criteria for certification (including criteria for the recruitment of eligible individuals *as prescribed by the Secretary*)." 8 U.S.C. § 1188(c)(3)(A)(i) (emphasis added). The statute also provides that, for three years from its effective date, certain employers must "provide benefits, wages and working conditions required pursuant to this section and *regulations*," and provides scenarios in which then-operative section 20 C.F.R. § 655.202(b)(6) "or any successor regulation" regarding displaced H-2A workers would not apply. *id.* § 1188(c)(3)(b)(i), (vi) (emphasis added). And section 1188(c)(4) specifies that "[e]mployers shall furnish housing in accordance with regulations." None of these provisions is itself a grant of rulemaking authority, but each plainly recognizes that such rulemaking authority exists.

As DOL explained more than thirty years ago, the various provisions of the statute, taken together, "leave[] to the Secretary the task of developing operational standards to effect the Congressional purpose" of avoiding adverse effect and "require[s] the Secretary to develop

systematic standards and procedures for deciding upon labor certification applications." DOL, Final Rule, Labor Certification Process for the Temporary Employment of Aliens in Agriculture in the United States: Prevailing Practice Determinations, 57 Fed. Reg. 43118, 43119 (Sept. 17, 1992). Indeed, since 1987—the year after the H-2A program was created—DOL has consistently understood the statute to provide such rulemaking authority. *See* 1987 Rule, 52 Fed. Reg. at 20507. That interpretation "issued contemporaneously with the statute at issue, and which ha[s] remained consistent over time," is "especially useful in determining the statute's meaning." *Loper Bright*, 144 S. Ct. at 2262. And this interpretation has been repeatedly endorsed by reviewing courts. *See, e.g.*, *Overdevest Nurseries, L.P. v. Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021); *Mendoza v. Perez*, 754 F.3d 1002, 1021 (D.C. Cir. 2014); *Fla. Growers Ass'n v. Su*, No. 8:23-CV-889, 2024 WL 670464, at *2 (M.D. Fla. Jan. 5, 2024), *report and recommendation adopted*, No. 8:23-CV-889, 2024 WL 1343021 (M.D. Fla. Mar. 29, 2024). As another district court recently explained, "the 'best reading' of § 1188, in its entirety, is that Congress granted the DOL the authority to issue regulations to ensure that any certifications it issues for H-2A visas do not 'adversely affect' American agricultural workers." *Kansas v. DOL*, No. 2:24-CV-76, 2024 WL 3938839, at *5 (S.D. Ga. Aug. 26, 2024).

### B.    The challenged provisions are an appropriate exercise of DOL's delegated authority.

In support of their motion for a preliminary injunction, plaintiffs only assert that four specific provisions of the Rule, 20 C.F.R. § 655.135(h)(1), (h)(2)(i)-(ii), and (m), are outside DOL's statutory authority. But as DOL repeatedly explained throughout the Rule, these worker voice and empowerment provisions are exercises of DOL's authority to prescribe rules to prevent adverse effects on domestic workers. *See, e.g.*, 89 Fed. Reg. at 33991 (explaining that the provisions "reduce the potential for th[e H-2A] workforce's vulnerability to undermine the advocacy efforts

of similarly employed [domestic] workers"); *id.* (discussing "evidence that collective action by workers can help prevent adverse effect, particularly through improving employer compliance with the terms and conditions of employment under the H-2A program"); *id.* at 33987 (explaining that challenged provisions are exercise of DOL's "broad authority to implement the INA's prohibition on adverse effect"). Without these provisions:

> H-2A workers are less able and less likely to advocate on behalf of themselves or their coworkers to seek compliance with the terms and conditions of H-2A employment that the Department has determined are necessary to prevent adverse effect on the wages and working conditions of workers in the United States similarly employed. Additionally, the ability of employers to hire this uniquely vulnerable workforce may suppress the ability of agricultural workers in the United States to negotiate with employers and advocate on their own behalf regarding their terms and conditions of employment.

89 Fed. Reg. at 33990. Because Plaintiffs do not dispute this assessment by DOL, there is no basis to conclude that DOL exceeded the boundaries of the authority delegated to it by Congress.

## II.   The NLRA does not preclude the challenged provisions.

The NLRA provides certain rights, including the rights to organize and bargain collectively to "employees." *See* 29 U.S.C. § 157. The statutory definition of "employee" explicitly excludes "agricultural laborer[s]." 29 U.S.C. § 152(3). This exclusion, however, does not "preclude" any other regulation of agricultural labor relations, as Plaintiffs argue. ECF 18 at 111. As courts have long held, by carving out certain classes of workers from the NLRA, including agricultural workers and others, Congress did just the opposite—leaving the relationships between those workers and their employers open to any regulation that might be imposed pursuant to other authorities. *See, e.g.*, *Davenport v. Wash. Educ. Ass'n*, 551 U.S. 177, 181 (2007) (recognizing that NLRA left "states free to regulate their labor relationships with their public employees," who are excluded from the scope of the statute); *Greene v. Dayton*, 806 F.3d 1146, 1149 (8th Cir. 2015) (holding that Congress's exclusion of domestic service workers from the NLRA does not prohibit state from

affording similar protections); *Wilmar Poultry Co., Inc. v. Jones*, 430 F. Supp. 573, 578 (D. Minn. 1977) (holding that NLRA did not preempt state law "because the NLRA's protections and prohibitions do not apply to agricultural laborers"); *see also United Farm Workers of Am., AFL-CIO v. Ariz. Agr. Emp't Rels. Bd.*, 669 F.2d 1249, 1257 (9th Cir. 1982) ((recognizing that by excluding agricultural workers from NLRA, Congress "implie[d] that in such matters [its] policy is indifferent" (quoting *Bethlehem Steel Co. v. N.Y. State Lab. Rels. Bd.*, 330 U.S. 767, 773 (1947))).[5] That the NLRA does not regulate the relationship between agricultural workers and their employers does not limit agency authority under other statutes to do so.

Moreover, Plaintiffs' argument that "regulating labor relations between agricultural workers and farm employers is contrary to Congress's intent," ECF 18 at 1, is irreconcilable with the existence of section 1188(b)(1) of the statute. As discussed above, that provision expressly contemplates both that agricultural workers will strike, and that DOL will issue regulations regarding such striking workers. The text of section 1188, including section 1188(b)(1), is far more probative of Congress's intent than anything cited by Plaintiffs. *See Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 394 (5th Cir. 2008) ("There is no better or more authoritative expression of congressional intent than the statutory text.").

### III. Any relief should be limited to the challenged provisions.

Amici believe that Plaintiffs have not satisfied the requirements for a preliminary injunction. Should the Court disagree and find that Plaintiffs are likely to succeed on the merits as

---

[5] While these cases involved the preemptive effect of the NLRA on state and local laws, courts have applied the same principles of NLRA preemption in determining whether federal executive agency action is precluded by the NLRA. *See, e.g.*, *UAW-Lab. Emp't & Training Corp. v. Chao*, 325 F.3d 360, 363 (D.C. Cir. 2003); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1334 (D.C. Cir. 1996).

to any of the provisions addressed in their memorandum (20 C.F.R. §§ 655.135(h)(1), (h)(2)(i)–(ii), and (m)), any relief should be limited to those provisions.

"[T]he scope of injunctive relief is dictated by the extent of the violation established," *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979). Such relief "should be no more burdensome to the defendant than necessary to provide complete relief" from that violation. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994) (quoting *Yamasaki*, 442 U.S. at 702). Here, because Plaintiffs' motion does not argue that any parts of the Rule other than 20 C.F.R. § 655.135(h)(1), (h)(2)(i)–(ii), and (m) are unlawful, the Court may award Plaintiffs complete relief by enjoining only enforcement of those provisions of the Rule.

A limited injunction would be appropriate given that "[r]egulations—like statutes—are presumptively severable." *Bd. of Cnty. Cmm'rs of Weld Cnty. v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023). Under the APA, courts "set aside only the invalid parts [of a regulation] unless the remaining ones cannot operate by themselves or unless the agency manifests an intent for the entire package to rise or fall together." *Id.*; *Nat'l Ass'n of Mfrs. v. SEC*, 105 F.4th 802, 816 (5th Cir. 2024) (considering same factors); *see also VanDerStok v. Garland,* No. 23-10718, 2023 WL 4945360, at *1 (5th Cir. July 24, 2023) (per curiam) ("Where a court holds specific portions of a rule unlawful, severance is preferred when doing so 'will not impair the function of the rule as a whole, and there is no indication that the regulation would not have been passed but for its inclusion.'" (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 294 (1988)). Where, as here, there is a severability clause, "courts 'should adhere to [its] text'… in the absence of 'extraordinary circumstances,'" none of which are present here.  *Nat'l Ass'n of Mfrs*, 105 F.4th at 815; *see also Franciscan Alliance, Inc. v. Burwell*, 227 F. Supp. 3d 660, 695 (N.D. Tex. 2016) ("Because the Rule includes a severability provision, none of the unchallenged provisions are enjoined."). DOL's

statement that it "inten[ds] that all provisions and sections be considered separate and severable and operate independently from one another," 89 Fed. Reg. at 33952, "dispels any doubt" as to the agency's intent, and the other parts of the Rule "can function sensibly without" the challenged provisions. *Nat'l Ass'n of Mfrs.*, 105 F.4th at 816. As such, any relief should be limited to those provisions.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' opposition, Plaintiffs' motion for a section 705 stay or a preliminary injunction should be denied.

Dated: November 4, 2024

Robert McDuff
MS Bar 25332
Mississippi Center for Justice
Jackson, MS 39215
(601) 259-8484
rbm@mcdufflaw.com

Respectfully submitted,

*/s/* Adam R. Pulver
Adam R. Pulver
*Admitted *pro hac vice*
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
apulver@citizen.org

*Counsel for Amici Curiae Centro de los Derechos del Migrante
and Candelario Rodriguez Serrano*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November, 2024, I electronically filed the foregoing pleading or other paper with the Clerk of the Court using the ECF system, which sent notification of such filing to all counsel of record.

*/s/* Adam R. Pulver
Adam R. Pulver
