**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL FRESH PRODUCE ASSOCIATION, et al.** | § § § § | **PLAINTIFFS** |
| **v.** | § § § | **Civil No. 1:24-cv-309-HSO-BWR** |
| **UNITED STATES DEPARTMENT OF LABOR, et al.** | § § § | **DEFENDANTS** |

**MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFFS'
MOTION [17] FOR PRELIMINARY INJUNCTION OR MOTION FOR
SECTION 705 STAY**

Plaintiffs' Motion [17] for Preliminary Injunction or Section 705 Stay asks the Court to stay the effective date of 89 Federal Regulation 33,898's amendments to 20 C.F.R. § 655.135(h)(2), (m), which strengthen the protections for agricultural migrant workers employed in the United States under the H-2A visa program. The Court has received briefs from Plaintiffs International Fresh Produce Association, American Farm Bureau Federation, Mississippi Farm Bureau Federation, Stone County Farm Bureau, Chamber of Commerce of the United States of America, AmericanHort, Florida Fruit & Vegetable Association, North American Blueberry Council, Texas International Produce Association, State of Mississippi, and U.S. Apple Association (collectively "Plaintiffs"), and Defendants United States Department of Labor, Jessica Looman, Jose Javier Rodriguez, and Julie Su (collectively "Defendants"). *See* Mot. [17]; Mem. [18]; Joinder [19]; Resp. [31]; Reply [33]. *Amici Curiae* Centro de los Derechos del Migrant, Candelario Rodriguez

Serrano, and American Federation of Labor & Congress of Labor Organizations

have filed Briefs [29], [32] in opposition of Plaintiffs' Motion [17]. *See* Brs. [29], [31].

On November 18, 2024, the Court held a hearing on the Motion [17] at which

counsel for the parties presented oral argument. After consideration of the record

in this case, relevant legal authority, and the record of the hearing held on

November 18, 2024, the Court finds that the Motion [17] should be granted and that

a stay under 5 U.S.C. § 705 should issue.

## I. BACKGROUND

A.    Relevant statutory and regulatory framework

On April 29, 2024, Defendant United States Department of Labor ("DOL")

issued 89 Federal Regulation 33,898, titled "Improving Protections for Workers in

Temporary Agricultural Employment in the United States" ("the Rule"). *See*

*Improving Protections for Workers in Temporary Agricultural Employment in the*

*United States*, 89 Fed. Reg. 33,898 (Apr. 29, 2024). Plaintiffs argue that the Rule's

amendments to 20 C.F.R. § 655.135(h)(2), (m) should be vacated because DOL

exceeded its statutory authority in adopting them, and because they conflict with

the National Labor Relation Act, 29 U.S.C. § 151, et seq. ("NLRA"), by creating

collective bargaining rights for agricultural workers. Plaintiffs further assert that

the amendments violate the First Amendment by imposing content-based

restrictions on employers' speech. *See* Mem. [18] at 14-27. Defendants respond that

the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. ("INA"), specifically §

1188(a)(1), (c)(3)(A), affords DOL the authority to promulgate the Rule, that the

amendments do not provide collective bargaining rights, and that they regulate conduct, not speech. *See* Resp. [31] at 18-41.

1.    The National Labor Relations Act

The NLRA "affords employees the rights to organize and to engage in collective bargaining free from employer interference." *N.L.R.B. v. Health Care & Ret. Corp. of Am.*, 511 U.S. 571, 572 (1994). Under 29 U.S.C. § 157, "[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." 29 U.S.C. § 157. The NLRA also defines who receives its protections, and it specifically excludes agricultural workers. 29 U.S.C. § 152(3) ("The term 'employee' . . . shall not include any individual employed as an agricultural laborer . . . .").

The NLRA empowers the National Labor Relations Board "to prevent any person from engaging in any unfair labor practice (listed in section 158 of this title) affecting commerce." 29 U.S.C. § 160. Section 158 provides that

It shall be an unfair labor practice for an employer-

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;

(2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it . . .

(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization . . .

> (4) to discharge or otherwise discriminate against an employee because he has filed charges or given testimony under this subchapter;
>
> (5) to refuse to bargain collectively with the representatives of his employees . . .

29 U.S.C. § 158(a)(1).  In sum, the NLRA establishes collective bargaining rights for employees, but it excludes agricultural workers from its protections.

2.    <u>H-2A visa program</u>

With the Immigration Reform and Control Act of 1986, Pub. L. No. 99–603, 100 Stat. 3359, Congress amended the INA and created the H-2A visa program. The H-2A visa program established a nonimmigrant visa classification for any migrant worker "having a residence in a foreign country which he has no intention of abandoning who is coming temporarily to the United States to perform agricultural labor or services . . . of a temporary or seasonal nature."  8 U.S.C. § 1101(a)(15)(H)(ii)(a).  The statute provides that an employer seeking to hire migrant workers under this program must first receive a certification from DOL that,

> (A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and
>
> (B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a)(1).  To ensure compliance with § 1188(a)(1), Congress delegated certain authority to DOL in § 1188(c)(3)(A), which states that,

(A) The Secretary of Labor shall make, not later than 30 days before the date such labor or services are first required to be performed, the certification described in subsection (a)(1) if--

> (i) the employer has complied with *the criteria for certification (including criteria for the recruitment of eligible individuals as prescribed by the Secretary)*, and

> (ii) the employer does not actually have, or has not been provided with referrals of, qualified eligible individuals who have indicated their availability to perform such labor or services on *the terms and conditions of a job offer which meets the requirements of the Secretary.*

In considering the question of whether a specific qualification is appropriate in a job offer, the Secretary shall apply the normal and accepted qualifications required by non-H-2A-employers in the same or comparable occupations and crops.

8 U.S.C. § 1188(c)(3)(A) (emphasis added).  Defendants point to the foregoing emphasized portions of § 1188 as delegating authority to DOL to adopt the challenged amendments to 20 C.F.R. § 655.135(h)(2), (m).  *See* Resp. [31] at 19.

3.    <u>89 Federal Regulation 33,898</u>

The Rule seeks "to provide stronger protections for workers protected by the H-2A program to advocate on behalf of themselves and their coworkers regarding their working conditions and prevent employers from suppressing this activity."  89 Fed. Reg. at 33,901.  Relevant here,[1] the Rule amends 20 C.F.R. § 655.135(h)(2), (m) to state that

An employer seeking to employ H-2A workers must agree as part of the Application for Temporary Employment Certification and job offer that it will abide by the requirements of this subpart and of 29 CFR part 501 and must make each of the following additional assurances:

---

[1] Plaintiffs clarified at oral argument that they are not challenging the Rule's amendments to § 655.135(h)(1), and they offer no specific substantive arguments as to § 655.135(h)(1) in their briefs. *See* Mem. [18]; Reply [33].

. . . .

(h) No unfair treatment.

. . . .

(2) With respect to any person engaged in agriculture as defined and applied in 29 U.S.C. 203(f), the employer has not and will not intimidate, threaten, restrain, coerce, blacklist, discharge or in any manner discriminate against, and has not and will not cause any person to intimidate, threaten, restrain, coerce, blacklist, or in any manner discriminate against, any person because such person:

(i) Has engaged in activities related to self-organization, including any effort to form, join, or assist a labor organization; or has engaged in other concerted activities for the purpose of mutual aid or protection relating to wages or working conditions; or has refused to engage in any or all of such activities; or[2]

(ii) Has refused to attend an employer-sponsored meeting with the employer or its agent, representative or designee, if the primary purpose of the meeting is to communicate the employer's opinion concerning any activity protected by this subpart; or has refused to listen to employer-sponsored speech or view employer-sponsored communications, the primary purpose of which is to communicate the employer's opinion concerning any activity protected by this subpart.

. . . .

(m) Designation of representative. With respect to any H-2A worker or worker in corresponding employment engaged in agriculture as defined and applied in 29 U.S.C. 203(f), employed at the place(s) of employment included in the Application for Temporary Employment Certification, the employer must permit a worker to designate a representative to attend any investigatory interview that the worker reasonably believes might result in disciplinary action and must permit the worker to receive advice and active assistance from the designated representative during any such investigatory interview. Where the designated representative is present at the worksite at the time of the investigatory

---

[2] The wording of this provision tracks the language of 29 U.S.C. § 157 which itself explicitly confers collective bargaining rights upon employees. *See* 29 U.S.C § 157.

> interview, the employer must permit the representative to attend the investigatory interview in person.  Where the designated representative is not present at the time and place of the investigatory interview, the employer must permit the representative to attend the investigatory interview remotely, including by telephone, videoconference, or other means.

20 C.F.R. § 655.135(h)(2), (m); *see also* 89 Fed. Reg. at 34,062-63.  Plaintiffs assert that, in effect, the Rule amends 20 C.F.R. § 655.135(h)(2), (m) to provide collective bargaining rights to migrant agricultural workers employed under the H-2A program and imposes restrictions on employers designed to protect those rights.  Mem. [18] at 18-21; *compare* 20 C.F.R. § 655.135(h)(2), (m), *with* 29 U.S.C. §§ 157, 158(a)(1); *see also* 89 Fed. Reg. at 34,062-63.  The Rule went into effect on June 28, 2024, but DOL delayed enforcement of the challenged amendments until August 29, 2024.  89 Fed. Reg. at 33,898; *see also* Resp. [31] at 8-9.

B.   Procedural history

1.   Plaintiffs' Complaint [1]

Plaintiffs filed their Complaint [1] on October 8, 2024, arguing that the amendments to 20 C.F.R. § 655.135(h)(2), (m) exceed DOL's statutory authority, that they are not in accord with the NLRA (Count One), and that they violate the First Amendment to the United States Constitution (Count Two).  Compl. [1] at 15-23.  The Complaint [1] seeks a declaratory judgment that the amendments are unlawful (Count Three).  *Id.* at 23.  On October 10, 2024, Plaintiffs filed the present Motion [17] for Preliminary Injunction and Section 705 Stay, asking the Court to issue a temporary vacatur of the amendments to 20 C.F.R. § 655.135(h)(2), (m) under 5 U.S.C. § 705, or alternatively that it enjoin their enforcement against

Plaintiffs.[3]  Mot. [17] at 2.  Defendants and *Amici* oppose the Motion [17].  *See* Resp. [31]; Br. [29]; Br. [32].  After Plaintiffs filed their Reply [33], *see* Reply [33], the Court heard oral argument on the Motion [17] on November 18, 2024, *see* Minute Entry, Nov. 18, 2024.

2.    <u>Plaintiffs' Motion [17] for Preliminary Injunction</u>

Plaintiffs contend that the INA delegates limited authority to DOL which does not "have anything to do with workers' rights to 'engage[] in activities related to self-organization' or to 'refuse[] to attend' mandatory meetings."  Mem. [18] at 14-18 (alterations in original) (quoting 20 C.F.R. § 655.135(h)(2)(i)-(ii)).  For this reason, Plaintiffs argue that DOL exceeded its authority by creating collective bargaining rights for migrant workers.  *Id.*  Plaintiffs further maintain that DOL exceeded its authority because the NLRA exempts agricultural laborers from receiving collective bargaining rights, and by including language in the amendments that is "nearly identical" to that of the NLRA, "Defendants have attempted to bypass express congressional intent."  *Id.* at 18-21.  As for the prohibition on employers threatening employees who refuse to attend meetings whose primary purpose is for the employer to express anti-union views, Plaintiffs take the position that 20 C.F.R. § 655.135(h)(2)(ii) violates the First Amendment by restricting speech based on the employer's viewpoint.  *Id.* at 21-27.

---

[3] In another case challenging the same provisions of the Rule, the United States District Court for the Southern District of Georgia preliminarily enjoined DOL from enforcing the Rule within the geographic bounds of the seventeen plaintiff states in that case.  *See Kansas v. U.S. Dept. of Lab.*, No. 2:24-CV-76, 2024 WL 3938839, at *13 (S.D. Ga. Aug. 26, 2024).

Defendants respond that "Congress vested DOL with 'discretion' to determine 'how to ensure that the importation of farmworkers met the statutory requirements[,]'" Resp. [31] at 23 (quoting *AFL-CIO v. Dole*, 923 F.2d 182, 184 (D.C. Cir. 1991)), and that this constitutes a "broad congressional delegation of authority" which allows DOL to issue the Rule, *id.* (quoting *Dole*, 923 F.2d at 187).  They contend that the NLRA does not preclude the amendments because they do not provide collective bargaining rights to H-2A workers, and instead "simply expand the H-2A program's existing anti-discrimination provisions . . . ."  *Id.* at 30. Defendants point out that even if the Rule created NLRA protections, the NLRA does not intend to foreclose regulation of this issue, as many states provide NLRA-style protections to agricultural workers.  *Id.* at 33.  Regarding Plaintiffs' First Amendment claim, Defendants maintain that the Rule regulates conduct not speech, and any extent to which the Rule burdens speech is incidental.[4]  *Id.* at 37-40.

Plaintiffs argue in reply that Defendants "vastly overread[]" DOL's rulemaking authority under the INA, and that while the INA permits DOL to "promulgate regulations setting terms and conditions of employment under the H-2A program[,]" it does not grant DOL the "power to set whatever criteria for certification to participate in the H-2A program by regulation it likes, according to

---

[4] *Amici Curiae* Centro de los Derechos del Migrante and Candelario Rodriguez Serrano raise the same arguments as those advanced by Defendants.  *See* Br. [29].  *Amicus Curiae* American Federation of Labor & Congress of Labor Organization ("AFL-CLO") focuses on the NLRA and First Amendment arguments, expanding on Defendants' points and providing authority supporting the claim that because states can provide NLRA-style rights, federal agencies can do likewise as "state action and federal executive action are analyzed using the same preemption principles."  Br. [32]. at 6-18.

whatever it believes is good policy as a matter of general labor relations." Reply [33] at 10-12.  Plaintiffs point out that the context surrounding § 1188(a)(2) "suggest[s] a limited and essentially ministerial role for DOL[,]" and that if Congress intended to provide general rulemaking power to DOL, "it would have given a clear and express indication of that purpose." *Id.* at 13.  And they maintain that Defendants' attempt to distinguish between regulating conduct and speech misses the mark because "the Court must ask whether the message matters, or just the action[,]" and "[h]ere, it is the message that matters—not the action." *Id.* (alterations, quotations, and emphasis in original removed).

## II. <u>DISCUSSION</u>

A.   <u>Relevant law</u>

1.   <u>Stays under § 705</u>

"Section 705 of the [Administrative Procedure Act] authorizes a reviewing court to 'issue all necessary and appropriate process to postpone the effective date of an agency action' that is pending review." *Career Colls. & Sch. of Texas v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) (quoting 5 U.S.C. § 705); *see also Texas v. United States Env't. Prot. Agency*, 829 F.3d 405, 435 (5th Cir. 2016) (invoking § 705 to stay an agency rule, "pending the outcome of th[e] petition for review").  "[T]he scope of preliminary relief under Section 705 aligns with the scope of ultimate relief under Section 706, which is not party-restricted and allows a court to set aside an unlawful agency action." *Career Colls.*, 98 F.4th at 255 (quotations omitted).  However, § 705 "relief should only involve postponing the effective date of

the portions of the Rule that [the plaintiff] *actually challenges* and for which it has shown a likelihood of success on the merits." *Id.* (emphasis in original).

In deciding whether to issue a § 705 stay, the Fifth Circuit considers the same factors as those used to determine whether to issue a preliminary injunction under Rule 65(a) of the Federal Rules of Civil Procedure. *See Airlines for Am. v. Dep't of Transp.*, 110 F.4th 672, 674 (5th Cir. 2024) (issuing a § 705 stay after evaluating the factors set forth in *Nken v. Holder*, 556 U.S. 418, 435 (2009)); *see also Nken*, 566 U.S. at 434 ("There is substantial overlap between these [factors] and the factors governing preliminary injunctions[.]"). Therefore, the Court will address Plaintiffs' request for a preliminary injunction and a § 705 stay concurrently.

Before a court may issue either form of relief, it must determine:

> (1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Airlines for Am.*, 110 F.4th at 674 (alteration in original) (quoting *Nken*, 566 U.S. at 434-45). "The party seeking the stay bears the burden of showing its need." *Wages & White Lion Invs., L.L.C. v. United States Food & Drug Admin.*, 16 F.4th 1130, 1135 (5th Cir. 2021) ("*Wages & White Lion Invs., L.L.C. I*") (quotations omitted). "The first two factors are the most critical[,]" *id.*, and where, as here, the Government is the opposing party, the third and fourth factors merge, *Nken*, 566 U.S. at 435.

2.   <u>The Administrative Procedure Act</u>

The Administrative Procedure Act ("APA") "authorizes suit by '[a] person

suffering legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute.'" *Norton v. S. Utah*

*Wilderness All.*, 542 U.S. 55, 61 (2004) (alteration in original) (quoting 5 U.S.C.

§ 702).  The APA directs courts to

> hold unlawful and set aside agency action, findings, and conclusions
> found to be—
>
> (A) arbitrary, capricious, an abuse of discretion, or otherwise not in
> accordance with law;
>
> (B) contrary to constitutional right, power, privilege, or immunity;
>
> (C) in excess of statutory jurisdiction, authority, or limitations, or short
> of statutory right . . . .

5 U.S.C. § 706(2).

"[A]n agency literally has no power to act . . . unless and until Congress

confers power upon it." *Louisiana Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374

(1986).  In *Loper Bright Enterprises v. Raimondo*, the Supreme Court of the United

States held that the APA "specifies that courts, not agencies, will decide '*all*

relevant questions of law' arising on review of agency action . . . and set aside any

such action inconsistent with the law as they interpret it."  144 S. Ct. 2244, 2261

(2024) (emphasis in original) (quoting 5 U.S.C. § 706).  The Supreme Court clarified

that the APA "prescribes no deferential standard for courts to employ in answering .

. . legal questions" and "codifies for agency cases the unremarkable, yet elemental

proposition reflected by judicial practice dating back to [*Marbury v. Madison*, 5 U.S.

137 (1803)]: that courts decide legal questions by applying their own judgment." *Id.*
Where Congress "has clearly delegated discretionary authority to an agency,
[courts] discharge [their] duty by 'independently interpreting the statute and
effectuating the will of Congress subject to constitutional limits.'" *Mayfield v.
United States Dep't of Lab.*, 117 F.4th 611, 617 (5th Cir. 2024) (alterations in
original omitted) (quoting *Loper Bright*, 144 S. Ct. at 2263). The Court "need only
fulfill [its] obligations under the APA to independently identify and respect such
delegations of authority, police the outer statutory boundaries of those delegations,
and ensure that agencies exercise their discretion consistent with the APA." *Loper
Bright*, 144 S. Ct. at 2268. "Doing so requires using 'all relevant interpretive tools'
to determine the 'best' reading of a statute; a merely 'permissible' reading is not
enough." *Mayfield*, 117 F.4th at 617 (quoting *Loper Bright*, 144 S. Ct. at 2268).

   That is not to say that Congress cannot delegate "a degree of discretion" to an
agency, as "[f]or example, some statutes 'expressly delegate' to an agency the
authority to give meaning to a particular statutory term." *Loper Bright*, 144 S. Ct.
at 2263 (alteration in original omitted) (citing as examples statutes using the
phrases "as such terms are defined and delimited by regulations of the Secretary"
and "as defined by regulations which the Commission shall promulgate" (emphasis
in original omitted)). The Supreme Court highlighted that other statutes "empower
an agency to prescribe rules to 'fill up the details' of a statutory scheme, or to
regulate subject to the limits imposed by a term or phrase that 'leaves agencies with
flexibility,' such as 'appropriate' or 'reasonable.'" *Id.* (internal citations omitted)

(citing 42 U.S.C. § 7412(n)(1)(A) as an example, which directs the Environmental
Protection Agency ("EPA") to regulate power plants "if the Administrator finds such
regulation is appropriate and necessary."); *cf. Michigan v. E.P.A.*, 576 U.S. 743, 751-
52 (2015) (highlighting that the phrasing Congress used in 42 U.S.C. § 7412(c)(3),
which authorized the EPA to regulate "area sources" "if they 'present a threat of
adverse effects to human health or the environment warranting regulation[,]'" is a
"cabined criteria for EPA to apply when deciding whether to include sources in the
program[,]" and is in "stark contrast" to the "classic broad and all-encompassing
term" "appropriate[,]" which is found in § 7412(n)(1)(A) and "leaves agencies with
flexibility[.]" (alterations in original omitted) (quoting 42 U.S.C. § 7412(c)(3) (other
quotations omitted))).

B.    Analysis of the preliminary injunction and § 705 stay factors

1.    Plaintiffs' likelihood of success on the merits

The Court turns to whether DOL possessed the statutory authority to issue
the § 655.135(h)(2), (m) amendments.  To determine the extent of DOL's authority,
the Court looks first to the text of the INA.  *See VanDerStok v. Garland*, 86 F.4th
179, 188 (5th Cir. 2023), *cert. granted*, 144 S. Ct. 1390, 218 L. Ed. 2d 679 (2024)
("How do we know when an agency has exceeded its statutory authority?  Simple:
the plain language of the statute tells us so.  Therefore, we start, as we always do,
with the text." (quotations and alterations in original omitted)).  The Court must
place the words of the statute "in their context and with a view to their place in the
overall statutory scheme."  *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809

14

(1989). "Only where the statutory text shows that [DOL] has 'clear congressional authorization' to enact a regulation can such a regulation withstand judicial scrutiny." *VanDerStok*, 86 F.4th at 188 (quoting *West Virginia v. Env't Prot. Agency*, 597 U.S. 697, 732 (2022)).

Defendants cite § 1188(a)(1) and (c)(3) to justify the amendments to § 655.135(h)(2), (m); § 1188(a)(1) provides:

(a) Conditions for approval of H-2A petitions

(1) A petition to import an alien as an H-2A worker (as defined in subsection (i)(2)) may not be approved by the Attorney General unless the petitioner has applied to the Secretary of Labor for a certification that—

> (A) there are not sufficient workers who are able, willing, and qualified, and who will be available at the time and place needed, to perform the labor or services involved in the petition, and

> (B) the employment of the alien in such labor or services will not adversely affect the wages and working conditions of workers in the United States similarly employed.

8 U.S.C. § 1188(a)(1). Section 1188(c)(3) then directs as follows:

(c) Special rules for consideration of applications
The following rules shall apply in the case of the filing and consideration of an application for a labor certification under this section:

. . . .

> (3) Issuance of certification

> (A) The Secretary of Labor shall make, not later than 30 days before the date such labor or services are first required to be performed, the certification described in subsection (a)(1) if—

>    (i) the employer has complied with the criteria for certification (including criteria for the recruitment of eligible individuals as prescribed by the Secretary), and
>
>    (ii) the employer does not actually have, or has not been provided with referrals of, qualified eligible individuals who have indicated their availability to perform such labor or services on the terms and conditions of a job offer which meets the requirements of the Secretary.
>
>    In considering the question of whether a specific qualification is appropriate in a job offer, the Secretary shall apply the normal and accepted qualifications required by non-H-2A-employers in the same or comparable occupations and crops.

8 U.S.C. § 1188(c)(3). Defendants argue that § 1188(c)(3) constitutes a broad grant of authority permitting DOL to issue regulations to prevent any adverse effects on domestic workers caused by the H-2A program.[5] Resp. [31] at 18. Defendants specifically point to the phrases "criteria for certification" and "terms and conditions of a job offer which meets the requirements of the Secretary" to justify their position. *Id.* at 19 (citing 8 U.S.C. § 1188(c)(3)(A)).

Plaintiffs assert that Defendants' reliance on § 1188(c)(3)(A) constitutes an impermissible *post hoc* justification for promulgating the amendments to § 655.135(h)(2), (m), as the Rule does not cite § 1188(c)(3)(A) as DOL's authority for issuing the challenged amendments. *See generally* 89 Fed. Reg. 33898 (citing § 1188(c)(3) only when discussing its authority to amend 20 C.F.R. §§ 655.137, 655.135(p), 655.137(c)(8) and 655.103(e) but not § 655.135(h)(2), (m)); *see also Wages*

---

[5] The crux of DOL's adverse effect justification is that without the amendments to § 655.135(h)(2), (m), H-2A employers will turn to vulnerable H-2A workers at the expense of domestic workers. 89 Fed. Reg. at 33987. However, this argument is undercut by § 1188(a)(1)(i), which requires DOL to ensure that H-2A visas are only issued if there is insufficient domestic labor supply to meet demand. *See* 8 U.S.C. § 1188(a)(1)(i).

*& White Lion Invs., L.L.C. v. Food & Drug Admin.*, 90 F.4th 357, 372 (5th Cir.)

("*Wages & White Lion Invs., L.L.C. II*") ("The Supreme Court emphatically rejected

that lawyerly effort: 'The short—and sufficient—answer to petitioners' submission

is that the courts may not accept appellate counsel's *post hoc* rationalizations for

agency action.  It is well-established that an agency's action must be upheld, if at

all, on the basis articulated by the agency itself.'" (emphasis in original) (quoting

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S.

29, 50 (1983))), *cert. granted*, 144 S. Ct. 2714 (2024).

     The plain text of these phrases cannot be read as such a broad grant of

authority as to allow DOL to effectively provide collective action rights to H-2A

workers in the name of reducing the adverse effect of the H-2A program on domestic

workers; the language does not support the conclusion that DOL can prescribe these

kinds of rights as part of the "criteria for certification[.]"[6]  *See* 8 U.S.C. §

1188(c)(3)(i).  Following § 1188(c)(3)(A)(i)'s use of "criteria for certification[,]" the

section includes a parenthetical, where the words "*as prescribed by the Secretary*"

follow "including the criteria for the recruitment of eligible individuals[.]"  *Id.*

(emphasis added).  If Congress intended DOL to have the broad authority to

determine certification requirements beyond what is explicitly stated in the statute,

it could have instead placed or added "as prescribed by the Secretary" after "criteria

for certification[,]" but that would render use of the phrase in the parenthetical

---

[6] As noted earlier, the language of the amendments to 20 C.F.R. §655.135(h)(2), (m) so closely mirrors that of the NLRA provision which confers collective bargaining rights, that the only reasonable conclusion one can draw is that the amendments intend to do the same.  *Compare* 29 U.S.C. §§ 157, 158(a), *with* 89 Fed. Reg. at 34062-63.

surplusage. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 128 (2018) ("Absent clear evidence that Congress intended this surplusage, the Court rejects an interpretation of the statute that would render an entire subparagraph meaningless. As this Court has noted time and time again, the Court is obliged to give effect, if possible, to every word Congress used." (quotations omitted)). As written, the phrase "as prescribed by the Secretary" modifies only the language in the parenthetical, indicating it was not meant to apply to the phrase "criteria for certification." *See id.*

Reading § 1188(c)(3)(A) in the context of other provisions of the INA also reflects an intent that DOL play a limited role in effectuating the H-2A program. For example, the language of the INA appears to confer broad authority upon the Departments of Justice and Homeland Security, but no similar provision exists conferring such authority upon DOL. *See, e.g.*, 8 U.S.C. § 1103(a)(1) ("[The Secretary of Homeland Security] shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority under the provisions of this chapter."); 8 U.S.C. § 1103(g)(2) ("The Attorney General shall establish such regulations, prescribe such forms of bond, reports, entries, and other papers, issue such instructions, review such administrative determinations in immigration proceedings, delegate such authority, and perform such other acts as the Attorney General determines to be necessary for carrying out this section."); *see also Loper Bright*, 144 S. Ct. at 2263 (highlighting that similar language is usually

used by Congress to delegate broad authority); *Michigan*, 576 U.S. at 751-52

(pointing out that Congress directing the EPA to regulate power plants if

"appropriate and necessary" is language which "leaves agencies with flexibility").  If

Congress wished to confer similar authority upon DOL, it could have done so by

employing similar language as that used to delegate authority to these other

Departments elsewhere in the statute.  But it did not.[7]  *See Nat'l Ass'n of Mfrs.*, 583

U.S. at 128 ("The Government invites us to broaden that narrow language to cover

any agency action that dictates whether a permit is issued or denied. . . . But

Congress chose not to do so.").

    And § 1188(c)(3)(A) also appears to limit DOL's authority, stating that "[i]n

considering the question of whether a specific qualification is appropriate in a job

---

[7] In a string citation, Defendants reference 8 U.S.C. § 1188(c)(3)(B)(iii) as evidence that DOL does not occupy a limited role in enforcing the H-2A program.  Resp. [31] at 23.  Section 1188(c)(3)(B)(iii) relates to the "50 percent rule," which requires an H-2A employer to "provide employment to any qualified United States worker who applies to the employer until 50 percent of the period of the work contract, under which the foreign worker who is in the job was hired, has elapsed."  8 U.S.C. § 1188(c)(3)(B)(i).  Section 1188(c)(3)(B)(iii) requires DOL to make findings on "a policy which requires an employer, as a condition for certification under this section, to continue to accept qualified, eligible United States workers for employment after the date the H-2A workers depart for work with the employer." 8 U.S.C. § 1188(c)(3)(B)(iii).  The findings shall be issued on whether *this policy* is in furtherance of the Congressional mandate found in § 1188(a)(1).  *Id.*  Then, if there is no federal legislation addressing the "50 percent rule" thirty-three months after the effective date of § 1188, "the Secretary shall immediately publish the findings required by this clause, and shall promulgate, on an interim or final basis, regulations based on his findings which shall be effective no later than three years from the effective date of this section."  *Id.* (emphasis added).  The foregoing is not a broad grant of authority, as § 1188(c)(3)(B)(iii) is limited only to the "50 percent rule," for which DOL has already promulgated regulations, *see* 20 C.F.R. § 655.135(d), and § 1188(c)(3)(B)(iii) does not include any of the language usually found in broad delegations of authority, *see Loper Bright*, 144 S. Ct. at 2263.  And DOL did not cite § 1188(c)(3)(B)(iii) as its authority to issue any of the regulations in the Rule, let alone the challenged amendments to § 655.135(h)(2), (m).  *See* 89 Fed. Reg. at 33899, 33901, 33987-95, 33998, 34003-15; *see also Wages & White Lion Invs., L.L.C. II*, 90 F.4th at 372 ("The Supreme Court emphatically rejected that lawyerly effort: 'The short—and sufficient—answer to petitioners' submission is that the courts may not accept appellate counsel's *post hoc* rationalizations for agency action.  It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself.'" (emphasis in original) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 50)).

offer, the Secretary shall apply the normal and accepted qualifications required by non-H-2A-employers in the same or comparable occupations and crops." 8 U.S.C. § 1188(c)(3). In other words, when reviewing the terms of H-2A employers' job offers, DOL's authority is limited to looking at what non-H-2A employers usually offer. *See* 8 U.S.C. § 1188(c)(3)(i). But here, DOL seeks to confer upon H-2A agricultural workers NLRA-style rights that Congress specifically chose to not confer upon domestic agricultural workers.[8] *See* 29 U.S.C. § 152(3) ("The term 'employee' . . . shall not include any individual employed as an agricultural laborer"). Considering this context, the Court does not see how the text of § 1188 affords DOL the broad delegation of authority it claims such as to allow it to provide collective rights to H-2A workers which would not otherwise be available to domestic agricultural workers. And the Court may not read such authority into the statute at Defendants' behest. *See Nat'l Ass'n of Mfrs.*, 583 U.S. at 128 ("The Court declines the Government's invitation to override Congress' considered choice by rewriting the words of the statute.").

---

[8] Additionally, the statutory authority DOL invokes was created decades after the NLRA. Courts "generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts." *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 176 (1988). If Congress thought collective action rights were necessary to reduce the adverse effects of migrant workers upon domestic workers, it could have amended the NLRA through the INA to provide collective action rights to H-2A agricultural workers. *See, e.g., Agri Processor Co., Inc. v. N.L.R.B.*, 514 F.3d 1, 4 (D.C. Cir. 2008) ("[T]here is no clear indication that Congress intended IRCA implicitly to amend the NLRA, but all available evidence actually points in the opposite direction"); *see also Virginia Uranium, Inc. v. Warren*, 587 U.S. 761, 765 (2019) (plurality opinion) ("[A]s in any field of statutory interpretation, it is our duty to respect not only what Congress wrote but, as importantly, what it didn't write."); *Ziglar v. Abbasi*, 582 U.S. 120, 143 (2017) ("[I]n any inquiry respecting the likely or probable intent of Congress, the silence of Congress is relevant[.]").

Defendants argue that because DOL has provided similar protections to H-2A workers as individuals for decades, *see* 20 C.F.R. § 655.135(h)(1)(i)-(iv), (vi), creating these rights for a collective falls within the historical purview of its authority, Resp. [31] at 27.  Even if this were true, collective rights are inherently different from individual rights.  *See, e.g., Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) (discussing the difference between the "rights . . . conferred on employees collectively" by the NLRA and the individual rights conferred by Title VII, finding that while a "a union may waive certain statutory rights related to collective activity[,]" the individual rights conferred by Title VII "can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII.").  While the question of whether DOL has authority to issue § 655.135(h)(1) is not before the Court, simply because a regulation has not been challenged historically does not mean that it is free from any future challenge.  *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 144 S. Ct. 2440, 2459 (2024) ("[A] federal regulation that makes it six years without being contested does not enter a promised land free from legal challenge." (quotations and alterations in original omitted)).

Defendants contend that the amendments are necessary to prevent widespread violation of other regulations DOL has promulgated in an effort to reduce the H-2A program's adverse effects on domestic workers.  Resp. [31] at 14-15.  But simply because there may be widespread violations of other regulations, does not mean that § 1188 confers upon DOL the authority to enact any rule it

deems necessary to prevent such violations.  *See West Virginia,* 597 U.S. at 723

("Agencies have only those powers given to them by Congress, and enabling

legislation is generally not an open book to which the agency may add pages and

change the plot line." (quotations and alterations in original omitted)).

Defendants also point to the discussion in *AFL-CIO v. Dole* to support their

position that the INA contains a broad delegation of authority.  Resp. [31] at 23; *see

also* 923 F.2d 182, 187 (D.C. Cir. 1991) ("The government's choice of methodology is

really a policy decision taken within the bounds of a rather broad congressional

delegation.").  But *Dole* is distinguishable because that case dealt with the DOL's

role in setting the adverse effect wage rate, which is a minimum wage that H-2A

employers must offer first to domestic workers, and then to H-2A workers if the job

remains unfilled, as a means of ensuring domestic wages are not depressed.  *See

Dole*, 923 F.2d at 187.  That is a much more limited exercise of authority than the

grant of collective action rights at issue here.  And the statutory source of that

authority provided that DOL must ensure, before certifying an employer's request

to hire H-2A workers, that the employer has met § 1188(a)(1)'s "criteria for

certification (including criteria for the recruitment of eligible individuals as

prescribed by the Secretary)," and that no domestic workers "have indicated their

availability to perform such labor or services on the terms and conditions of a job

offer which meets the requirements of the Secretary."  8 U.S.C. § 1188(c)(3)(A).

Regulating the wage offered by H-2A employers more easily fits within the scope of

the delegation granted to DOL,[9] and nothing in the text of the INA supports

Defendants' position that DOL possesses the broad authority to prescribe

regulations conferring collective rights upon agricultural H-2A workers.  *See West

Virginia,* 597 U.S. at 723 ("Extraordinary grants of regulatory authority are rarely

accomplished through modest words, vague terms, or subtle devices." (quotations

and alterations in original omitted)).

The best reading of the statute is that it does not delegate to DOL the

authority to create the challenged amendments to the regulations.  As such,

Plaintiffs are likely to succeed on the merits of their challenge that DOL exceeded

its authority in issuing 20 C.F.R. § 655.135(h)(2), (m), and the Court need not reach

Plaintiffs' NLRA preclusion and First Amendment arguments.

2.    Irreparability of harm

Turning to the potential harm absent an injunction or stay, Plaintiffs have

adequately shown that the amendments to 20 C.F.R. § 655.135(h)(2), (m) will cause

irreparable harm because they will need to alter their operating procedures and

---

[9] *Dole* does not mention or expressly rely on *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984), but *Dole* reached its conclusion because, in part, it found that since "Congress did not, however, further define adverse effect[,]" it left "in the Department's discretion how to ensure that the importation of farmworkers met the statutory requirements." *Dole*, 923 F.2d at 184.  At the time, under *Chevron*, courts presumed that "when [Congress] left ambiguity in a statute meant for implementation by an agency, [it] understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 740-41 (1996) (citing *Chevron*, 467 U.S. at 843-44).  Post-*Loper Bright*, this presumption no longer applies, and the Court may not presume that where ambiguity exists Congress intended to delegate broad authority to an agency. *See Loper Bright*, 144 S. Ct. at 2265 ("In neither case does an ambiguity necessarily reflect a congressional intent that an agency, as opposed to a court, resolve the resulting interpretive question.").

incur compliance costs.[10]  *Wages & White Lion Invs., L.L.C. I*, 16 F.4th at 1142

("[C]omplying with an agency order later held invalid almost always produces the

irreparable harm of nonrecoverable compliance costs." (quotations and alterations

in original omitted)).

Plaintiffs and their members depend on the H-2A program to operate, *see,*

*e.g.*, Dec. of Brookside Farms [17-13] at 2 ("H-2A workers have been essential for

the operations of Brookside Farms, as they provide a reliable and skilled workforce

during peak seasons."), and complying with § 655.135(h)(2), (m) as amended will

burden these operations, *see* Dec. of United States Chamber of Commerce [17-4]

("The requirement that members allow employees to have a representative present

for any communication which the employee reasonably believes might result in

discipline—for example, a discussion in the fields about productivity—will burden

harvesting activities that are already underway.").   Plaintiffs have also carried

their burden at this stage of showing that they will have to expend resources to

educate their members on the complexities of the amendments to 20 C.F.R.

§ 655.135(h), (m).  *See, e.g.*, Dec. of Florida Fruit & Vegetable Association [17-1] at 2

("FFVA has expended resources to educate its members on the complexities and

uncertainties of the Rule and how to achieve compliance.  The Rule is thus inflicting

---

[10] Defendants argue that Plaintiffs unreasonably delayed in seeking injunctive relief by filing their Motion [17] five and a half months after the Rule was published on April 29, 2024, such that they cannot show irreparable harm.  Resp. [31] at 41-42.  However, considering the ongoing litigation in the Southern District of Georgia, which Defendants themselves cite as justification for delaying until August 29, 2024, enforcement of the challenged portions of the Rule, *see id.* at 17 n.7, the Court finds no undue delay where Plaintiffs filed their Motion [17] a month and a half after the Southern District of Georgia decided not to issue a nationwide injunction, *see Kansas*, 2024 WL 3938839 at *13 (issued on August 26, 2024); Motion [17] (filed on October 17, 2024).

direct costs on FFVA as an organization and on its members.").[11]  And Plaintiffs have no recourse for recovering these lost compliance costs, as "federal agencies generally enjoy sovereign immunity for any monetary damages."  *Wages & White Lion Invs., L.L.C. I*, 16 F.4th at 1142.

To the extent Defendants argue that Plaintiff State of Mississippi has not shown irreparable harm, the Court is persuaded by the State's argument that because it must expend resources to ensure compliance with the H-2A program's requirements, it will be irreparably harmed by the challenged provisions.  *See, e.g.*, Dec. of Marcus Estes at 3-4 ("The Final Rule compels [the Mississippi Department of Employment Security ("MDES")] to commit staff resources toward its implementation without any additional funding from DOL to account for the increased workload. . . . [MDES] will be required to scrutinize every H-2A visa application against a likely increasing list of debarred employers, and to begin a lengthy process to discontinue those employers' services. . . . The process puts an additional burden on MDES staff and the agency's limited resources, interfering with the agency's ability to perform its other duties.").  The Court finds that Plaintiffs have carried their burden at this stage of showing irreparable harm.

3.    <u>Balance of equities and the public interest</u>

These last two factors merge when the Government is the opposing party. *Nken*, 556 U.S. at 435.  "There is generally no public interest in the perpetuation of

---

[11] Plaintiffs have submitted twenty-eight declarations attesting to the harm that would be caused by the amendments to 20 C.F.R. § 655.135(h)(2), (m).  *See* Decs. [17-1]; [17-2]; [17-3]; [17-4]; [17-5]; [17-6]; [17-7]; [17-8]; [17-9]; [17-10]; [17-11]; [17-12]; [17-13]; [17-14]; [17-15]; [17-16]; [17-17]; [17-18]; [17-19]; [17-20]; [17-21]; [17-22]; [17-23]; [17-24]; [17-25]; [17-26]; [17-27]; [17-28].

unlawful agency action[,]" *Louisiana v. Biden*, 55 F.4th 1017, 1035 (5th Cir. 2022) (quotations omitted), but there is a public interest "in having governmental agencies abide by the federal laws that govern their existence and operations[,]" *Texas v. Biden*, 10 F.4th 538, 559 (5th Cir. 2021) (quotations omitted). Also, "the maintenance of the status quo is an important consideration in granting a stay." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quotations omitted).

Because Plaintiffs have shown that the amendments to 20 C.F.R. § 655.135(h)(2), (m) are likely unlawful, the equity interests of Defendants evaporate. *See Louisiana*, 55 F.4th at 1035. Balancing this conclusion against the public interest in maintaining the status quo, *see Texas v. Biden*, 10 F.4th at 559, and the general interest in having agencies abide by federal law, *see Barber*, 833 F.3d at 511, the Court finds that an injunction or stay is in the public interest. Accordingly, Plaintiffs have shown that all four factors favor injunctive relief.

C.     Whether to grant a stay or preliminary injunction

Plaintiffs request that the Court enter a § 705 stay temporarily vacating the amendments to 20 C.F.R. § 655.135(h)(2), (m), or alternatively preliminarily enjoin enforcement of the amendments against Plaintiffs. Mem. [18] at 29-30. "In the same way that a preliminary injunction is the temporary form of a permanent injunction, a stay is the temporary form of vacatur." *All. for Hippocratic Med. v. U.S. Food & Drug Admin.*, 78 F.4th 210, 254 (5th Cir. 2023), *rev'd on other grounds*, 602 U.S. 367 (2024). "Between vacatur and an injunction, the former is the 'less drastic remedy.'" *Id.* (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139,

165 (2010)). "That is so because vacatur does not order the defendant to do anything; it only removes the source of the defendant's authority." *Id.* (citing *Nken*, 556 U.S. at 428-29, and *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022)). Under 5 U.S.C. § 706, if Plaintiffs succeed on the merits "it is likely that the default remedy—vacatur—will be appropriate. And the temporary version of vacatur is a stay." *Id.* at 255. Based upon the foregoing authority, the Court finds that a § 705 stay is the more appropriate form of relief in this instance.

Defendants and *Amici* request that the Court limit any relief to the parties and only to the challenged provisions of the Rule.[12] Resp. [31] at 45-49; Br. [29] at 20-22; Br. [32] at 30-32. But, "[n]othing in the text of Section 705, nor of Section 706, suggests that either preliminary or ultimate relief under the APA needs to be limited to [Plaintiffs] or its members." *Career Colls.*, 98 F.4th at 255. Considering the harm caused by the amendments to 20 C.F.R. § 655.135(h)(2), (m), the public interest in maintaining national uniformity, and the likelihood that the amendments will be found unlawful, the Court sees no reason that § 705 relief should be limited to Plaintiffs. *See id.* ("When a reviewing court determines that agency regulations are unlawful, the ordinary result is that the rules are vacated—

---

[12] To the extent Defendants argue the Court cannot issue a § 705 stay on an agency action already in effect, other courts, including the Fifth Circuit, have stayed agency regulations under § 705 after their effective date. *See, e.g.*, *Wages & White Lion Invs., L.L.C. I*, 16 F.4th at 1135, 1143-44; *Texas v. Biden*, 646 F. Supp. 3d 753, 770 (N.D. Tex. 2022), *appeal dismissed*, No. 23-10143, 2023 WL 5198783 (5th Cir. May 25, 2023); *see also Career Colls.*, 98 F.4th at 255-56 (stating that a § 705 stay mirrors the relief granted in *West Virginia v. E.P.A.*, 577 U.S. 1126 (2016), and *BST Holdings, L.L.C. v. Occupational Safety & Health Admin., United States Dep't of Lab.*, 17 F.4th 604 (5th Cir. 2021), both of which stayed agency actions after they went into effect); *All. For Hippocratic Med.*, 78 F.4th at 255-56 (expressing a "strong[] doubt" that § 705 requir[ed] that a stay be issued concurrently with an agency action").

not that their application to the individual petitioners is proscribed." (quotations omitted)).

The Fifth Circuit has also held that "it would be improper to enjoin portions of the Rule that are unchallenged or for which [Plaintiffs] ha[ve] not shown a likelihood of success on the merits . . . ." *Id.* So, the Court will limit the relief here to those portions of the Rule challenged by Plaintiffs, which are found at 20 C.F.R. § 655.135(h)(2),(m).

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Plaintiffs International Fresh Produce Association, American Farm Bureau Federation, Mississippi Farm Bureau Federation, Stone County Farm Bureau, Chamber of Commerce of the United States of America, AmericanHort, Florida Fruit & Vegetable Association, North American Blueberry Council, Texas International Produce Association, State of Mississippi, and U.S. Apple Association's Motion [17] for Preliminary Injunction or Section 705 Stay is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, insofar as the Rule intends to amend 20 C.F.R. § 655.135(h)(2), (m), the June 28, 2024, effective date of the final rule entitled *Improving Protections for Workers in Temporary Agricultural Employment in the United States*, 89 Fed. Reg. 33898 (Apr. 29, 2024) is **STAYED**

pursuant to 5 U.S.C. § 705 until the conclusion of proceedings in this case, including any appellate proceedings before the Fifth Circuit or Supreme Court.

**SO ORDERED AND ADJUDGED**, this the 25th day of November, 2024.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE